UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL DESJARLAIS,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　Defendant. | NO: 1:16-CV-3091-RMP<br><br>ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment from Plaintiff Michael DesJarlais, **ECF No. 13**, and the Commissioner of Social Security (the "Commissioner"), **ECF No. 18**. Mr. DesJarlais sought judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his claims for disability insurance benefits under Title II of the Social Security Act (the "Act") and supplemental security income under Title XVI of the Act. The Court has reviewed the parties' briefing, the administrative record, the relevant law, and is fully informed. The Court concludes that the Commissioner's decision did not refer to clear and convincing reasons to discredit Mr. DesJarlais's symptom

ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

testimony and to discount the opinion of his treating physician, and, therefore, **grants** Plaintiff's motion for summary judgment, **ECF No. 13**, and denies the Commissioner's cross-motion, **ECF No. 19**.

## BACKGROUND

### A. Mr. DesJarlais's Claim for Benefits and Procedural History

Mr. DesJarlais applied for disability insurance benefits in November 2010, alleging that he had become disabled on November 20, 2007, when he was 46 years old. Administrative Record ("AR") 190–92.[1] Plaintiff also protectively sought supplemental security income, through an application filed at or around the same time. Plaintiff listed the following conditions that limited his ability to work at the time: back and leg/knee conditions. AR 83. Mr. DesJarlais had at least a high school education and was able to communicate in English. AR 45, 649. He had past relevant work experience as an asphalt paving machine operator, a plant operator, a construction worker, and materials inspector.

The parties do not dispute that Mr. DesJarlais was under "insured status" until December 31, 2009, meaning that Mr. DesJarlais must establish that he became disabled prior to the expiration of that status to secure the disability insurance benefits he seeks. *See* 42 U.S.C. § 423(a), (c), (d).

---

[1] The AR is filed at ECF No. 10.

The Commissioner denied Mr. DesJarlais's claims initially and on reconsideration. Mr. DesJarlais consequently requested a hearing, which was held before an Administrative Law Judge ("ALJ"), Ilene Sloan, on December 19, 2012. The parties appealed the ALJ's January 2013 decision finding Mr. DesJarlais not disabled. The appeal was received by this District; however, Judge Robert H. Whaley remanded the case to the Commissioner for a second hearing upon the stipulation of the parties in July 2015. On January 25, 2016, ALJ Sloan held a hearing by video conference from Seattle, Washington, with Mr. DesJarlais participating from Yakima, Washington.

**B. January 25, 2016 Hearing**

Mr. DesJarlais was injured in a motorcycle accident on July 28, 2014. Therefore, the ALJ heard new evidence regarding those injuries and the resulting surgeries and other medical treatment that Mr. DesJarlais received. The ALJ also heard new testimony from Mr. DesJarlais and supplemented the record regarding Mr. DesJarlais's condition throughout the period in which he contends that he has been debilitated. The ALJ adopted her credibility analysis from her January 25, 2013 decision with respect to the level of impairment experienced by Mr. DesJarlais from his ailments.

**C. ALJ's Decision**

On March 18, 2016, the ALJ issued a partially favorable decision finding Mr. DesJarlais disabled after July 28, 2014, but not disabled prior to that date. The

ALJ undertook the five-step disability evaluation process, outlined below, and the Court summarizes the ALJ's findings as follows:

**Step one:** Mr. DesJarlais has engaged in substantial gainful activity since his alleged onset date, doing dump truck driving work in 2013 and office work in 2014.

**Step two:** Since November 20, 2007, Mr. DesJarlais has had the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease, status post laminectomy; degenerative changes, right knee; and left knee arthritis, status post left knee surgery in August 2011. The ALJ found that Mr. DesJarlais had demonstrated additional severe impairments after July 28, 2014, in the form of his physical state post hip/pelvis fracture and post lumbar fusion surgery. AR 620.

**Step three:** Mr. DesJarlais does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity ("RFC"):** During the period between Mr. DesJarlais's claimed onset of disability, November 2007, until July 28, 2014, Mr. DesJarlais was able to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could occasionally climb ramps and

stairs, and could never climb ladders, ropes, or scaffolds."[2]  AR 621.  The ALJ also found that Mr. DesJarlais had unlimited balance and could frequently stoop, and could occasionally kneel, crouch, and crawl. The ALJ further found that, beginning on July 28, 2014, Mr. DesJarlais retained the residual functional capacity "to perform sedentary work as defined in 20 CF 404.1567(a) and 516.967(a) except that he can only occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds.  He has unlimited balance and frequent stooping, occasional

---

[2] "Light work" is defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 5

kneeling, crouching, and crawling. The claimant should avoid concentrated exposure to vibration."[3] AR 628–29.

**Step four:** Since November 20, 2007, Mr. DesJarlais has been unable to perform any past relevant work. Beginning on July 28, 2014, the claimant has not been able to transfer job skills to other occupations.

**Step five:** Mr. DesJarlais was not disabled prior to July 28, 2014, including through December 31, 2009, when Mr. DesJarlais was last insured for purposes of securing disability insurance benefits. However, Mr. DesJarlais became disabled on July 28, 2014, and continued to be disabled through the date of the ALJ's decision.

Mr. DesJarlais requested review of the ALJ's decision by the Appeals Council. When the Appeals Council denied review, the ALJ's ruling became the

---

[3] "Sedentary work," as defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a), "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 6

final decision of the Commissioner and appealable to this Court under 42 U.S.C. § 405(g).

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

**B. Definition of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

**C. Sequential Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if he is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment

prevents the claimant from performing work he has performed in the past. If the plaintiff is able to perform his previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**D. Treating Physician Rule**

The treating physician rule requires that an ALJ give the medical opinion of a claimant's treating physician controlling weight if it is well supported by medical

ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 10

findings and not inconsistent with other substantial record evidence. 20 C.F.R. § 404.1527(c)(2). Although the Commissioner has eliminated the treating physician rule for claims filed on or after March 27, 2017, 82 Fed. Reg. 5852-53, the rule applies to Mr. DesJarlais's claim filed in November 2010. AR 190–92.

With respect to claims filed before March 27, 2017, the Ninth Circuit weighs medical opinion evidence according to the following hierarchy:

> Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinions of a treating source than to the opinion of doctors who do not treat the claimant.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The Commissioner may decline to give the claimant's treating physician controlling weight, only for "clear and convincing reasons" if the treating physician's opinion is not contradicted by another doctor, or for "specific and legitimate reasons" supported by substantial evidence in the record, where the treating physician's opinion is contradicted by another doctor. *Lester*, 81 F.3d at 831. In addition, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation and alteration omitted).

# ISSUES ON APPEAL

**A. Whether the ALJ erred in weighing the medical opinion evidence**

**B. Whether the ALJ erred in rejecting Plaintiff's symptom testimony based on an adverse credibility finding**

**C. Whether, if the Court finds legal error, the Court should remand or reverse and award benefits**

# DISCUSSION

**A. Whether the ALJ erred in weighing the medical opinion evidence**

Plaintiff argues that the ALJ did not give specific and legitimate reasons to discount the opinion of Plaintiff's treating physician from October 2012 until February 2016, Dr. Caryn Jackson. *See* AR 1241 (updated March 2016 opinion of Dr. Jackson providing dates of treatment). Plaintiff also argues that the ALJ's conclusions that Dr. Jackson had only seen Mr. DesJarlais on a single occasion were not based on substantial evidence in the record. Finally, Mr. DesJarlais maintains that if Dr. Jackson's full opinion were credited as true, in generating Mr. DesJarlais's RFC, it would support that Mr. DesJarlais, even before July 28, 2014, could not adjust to other work because he was unable to do the full range of sedentary work, thus compelling a finding of disability. *See* SSR 96-9, 1996 SSR LEXIS 6.

The Commissioner responds that Dr. Jackson's findings are contradicted by other medical evidence in the record and based on limited objective findings.

"[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (9th Cir. 1995). If controverted, "the opinion of an examining doctor . . . can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

Dr. Jackson gave an opinion on May 16, 2014, that Mr. DesJarlais's diagnoses of severe spinal stenosis with radiculopathy and bilateral knee pain would result in a severely limited capacity to engage in regular work and an inability to meet the demands of sedentary work. AR 920–21. Following Mr. DesJarlais's back surgery in 2015, Dr. Jackson gave a supplemental opinion regarding Mr. DesJarlais's functional abilities. AR 945–49. Dr. Jackson again opined that Mr. DesJarlais's impairment severely limited his capacity to perform regular work. AR 946.

On appeal, Mr. DesJarlais supplemented the record with a March 2016 opinion from Dr. Jackson opining that: work would result in further deterioration of Mr. DesJarlais's condition; Mr. DesJarlais likely would miss four or more days of work per month; and Mr. DesJarlais has been severely limited in his ability to work since at least January 2010. AR 1241–43.

The Court agrees with Plaintiff that the reasons offered for discounting Dr. Jackson's opinion regarding the level of work he could perform are not supported by substantial evidence in the record. First, the record firmly supports that Dr. Jackson was familiar with Mr. DesJarlais's treatment history and had seen Mr. DesJarlais on

more than one occasion, contrary to the ALJ's finding. *Compare* AR 628 (ALJ's finding that "Dr. Jackson worked at the clinic where the claimant received treatment, but it is unclear if she saw the claimant on more than a single occasion.") *with* AR 427–30 (office visit record from Oct. 8, 2012); 864–65 (test results copied to Dr. Jackson); 924–25 (office visit record from Apr. 28, 2014); 937–43 (office visit record from Aug. 4, 2015); 1065 (Jul. 31, 2014 hospital record referring to Mr. DesJarlais as being a patient of Dr. Jackson). Moreover, the findings regarding the functional limitations resulting from Plaintiff's degenerative arthritis, in his spine and knee, are not inconsistent with the findings of the other doctors cited by the ALJ because those doctors did not review Plaintiff's physical abilities and limitations cumulatively nor opine as to the level of work that Plaintiff was able to perform. *See* AR 1205–06 (assessment and treatment plan of Dr. Michael Chang regarding Mr. DesJarlais's lower back pain); 1208–10 (assessment and treatment plan of Dr. Todd Orvald regarding Mr. DesJarlais's knee pain).

The Court does not find clear and convincing or specific and legitimate reasons to have devalued Dr. Jackson's opinion. Therefore, the ALJ erred in rejecting Dr. Jackson's opinion in favor of state agency consultants Drs. Howard Platter and Wayne Hurley who concluded in 2011 that Mr. DesJarlais could perform light work.

Although the parties discuss the propriety of the weight accorded by the ALJ to other medical opinions in the record, the Court does not address Plaintiff's

challenges to those opinions because it has already found error regarding Dr. Jackson's opinion.

### B. Whether the ALJ erred in rejecting Plaintiff's symptom testimony based on an adverse credibility finding

Mr. DesJarlais argues that the ALJ's reasons for not fully crediting his testimony regarding his pre-July 2014 symptoms were not sufficiently clear and convincing.

The Commissioner's credibility determination must be supported by findings sufficiently specific to permit the reviewing court to conclude the ALJ did not arbitrarily discredit a claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An ALJ's failure to articulate specifically "clear and convincing" reasons for rejecting a claimant's subjective complaints is reversible error. *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007).

In addition to ordinary techniques of credibility evaluation, the ALJ may consider the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness; inconsistencies either in allegations of limitations or between statements and conduct; daily activities; work record; and testimony from physicians and third parties concerning the nature, severity, and

effect of the claimant's alleged symptoms. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ discounted Mr. DesJarlais's credibility based on her conclusion that his testimony regarding symptoms and the degree to which they incapacitated him was "not entirely consistent" with his medical record and that Mr. DesJarlais's daily activities were inconsistent with his allegations.

Mr. DesJarlais's testimony indicates that he has carried on his daily activities with difficulty. He stated that "for years" he has experienced two "down days" or "really bad days" approximately every ten days and that he has to "constantly adjust" his position due to "excruciating" back pain and "lie down once every couple hours at least for 15 or 20 minutes . . . ." AR 653–54, 665.

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The activities of daily living upon which the ALJ relied to discredit Mr. DesJarlais's testimony do not indicate any pattern of exertion consistent with performing light work. For instance, the ALJ focused her analysis on Mr. DesJarlais's testimony that he flew to Alaska and Hawaii by plane and extrapolated from those statements that such travel "would reasonable [sic] require

him to carry luggage; walk substantial distances between airport gates or terminals; and stand in check-in and security line [sic] for significant periods. He would also have to sit on the plane for significant periods." AR 624. Even if those assumptions were based on material in the record, two trips involving air travel do not translate to the demands of a regular work schedule or environment. Likewise, the ALJ's focus on Mr. DesJarlais's testimony that he tries to help his housemates with cleaning, yardwork, and other chores, when he is able, does not undermine his allegations regarding physical incapacity and discomfort.

Finally, the ALJ determined that Mr. DesJarlais could not have worked only three weeks as a dump truck driver in Alaska based on inaccurate math. The ALJ started with the proposition that Mr. DesJarlais earned $23,753 in the fourth quarter of 2013, when the record indicates that he earned $22,753. AR 812–13. More to the point, the discrepancy that the ALJ identified, that Mr. DesJarlais would have needed to work either seven or eleven weeks to earn that amount rather than the three weeks he had recalled during the hearing, even if true, does not undermine that such work was unsustainable and detrimental to Mr. DesJarlais's physical condition and does not disturb Mr. DesJarlais's testimony that he ceased the work when he could no longer physically remove himself from the truck. *See* AR 625.

In addition, for the reasons articulated in the medical opinion analysis above, the Court also cannot decipher clear and convincing reasons for the ALJ's finding

that Mr. DesJarlais's allegations were inconsistent with the medical evidence in the record.

### C. Whether the Court should remand or reverse and award benefits

A reviewing court that finds reversible error by the ALJ may remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). The reviewing court appropriately may remand for the limited purpose of calculating and awarding benefits where: (1) the record has been fully developed and further administrative proceedings would serve no purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence in question; and (3) if the improperly discredited evidence were credited as true the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, where the record is insufficient to compel a favorable determination, remand for a new hearing is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Plaintiff argues that the Court should apply the three-part "credit-as-true" standard to remand for an immediate award of benefits as of December 31, 2009, Plaintiff's date last insured. The Commissioner responds, in conclusory fashion, that "[e]ven if the ALJ erred, a remand for further proceedings is the appropriate remedy in this case given Plaintiff's lack of credibility." ECF No. 18 at 20 (quoting *Garrison*, 759 F.3d at 1021, for the proposition that remand is appropriate where "the record as a whole creates serious doubt that a claimant is, in fact, disabled.").

ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 18

With respect to whether Mr. DesJarlais has a disability, the only question still remaining at this stage is whether the ALJ appropriately found that he was capable of light work rather than limited to less than the full range of sedentary work. It is undisputed that Mr. DesJarlais could not perform his prior relevant work, so the burden of demonstrating that he could perform other substantial gainful activity was on the Commissioner. *See Kail*, 722 F.2d at 1498. However, as the Court found, there were not clear and convincing reasons stated by the ALJ, or apparent in the record, for finding that Mr. DesJarlais lacked credibility or for discounting his treating physician's opinion that Mr. DesJarlais was unable to meet the demands of sedentary work. Dr. Jackson further opined that Mr. DesJarlais would miss four or more days of work in an average month. AR 1242. The onset of that limitation was "prior to 2010." AR 945–46; *see also* AR 1241–43.

In his filings to this Court, Mr. DesJarlais effectively amends his onset date to December 31, 2009, the same day his insured status expired. *See* ECF No. 13 at 21. To avoid the expenditure of resources to rehear a matter in which there already is a sufficient record to support a finding of disability, the Court finds it appropriate to credit Dr. Jackson's opinion as true and remand the proceedings for an immediate award of benefits.

/ / /

/ / /

/ / /

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**, and this matter is **REMANDED** to the Commissioner for an immediate award of benefits based on an onset date of December 31, 2009.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

The District Court Clerk is directed to enter this Order, provide copies to counsel, **enter judgment for Plaintiff**, and **close the file** in this case.

**DATED** September 15, 2017.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge